## DECISION OF CHIEF JUSTICE LEE.

---

## B. W. C. J. WHITTIT vs. HENRY MILLER.

A minister's certificate of a marriage, unless it purports to be a copy of the record which the law requires him to keep of all marriages solemnized by him, is not admissible evidence, in cases of *crim. con.*, to prove the marriage.

A new trial will not be granted on the ground that improper evidence was admitted on the trial, if there be sufficient evidence without it to warrant the finding of the jury, and it does not appear that injustice has been done by the admission of the improper evidence.

A new trial will not be granted on the ground of excessive damages, in an action for *crim. con.*, unless it appears to the court that the jury acted under the influence of undue motives, or of gross error, or misconception of the subject.

This is a motion for a new trial, on the ground that the court was in error in charging the jury that the certificate of marriage introduced by the plaintiff on the trial, in connection with the proof of the identity of the persons therein named, might be sufficient to make out the marriage, and that it was a question for the jury, under all the circumstances, to say whether the marriage had been proved, inasmuch as the certificate is simply a statement of fact, and not a certified copy of a record, and therefore extra-judicial, and not admissible evidence to the jury.

On mature reflection, I am of the opinion that a minister's certificate of marriage, unless it purports to be a copy of the record which the law requires him to keep of all marriages solemnized by him, is not admissible evidence, in cases of criminal conversation, to prove the marriage. The law requires no such certificate to be given by officiating clergymen, and when given, as in this case, without any reference to his marriage record, it is a mere statement, inferior to his oath, and in the absence of any statute making it admissible evidence should not be received. Marriage in criminal cases, and in cases like this, which are criminal in their nature, should either be proved by the person solemnizing such marriage, by persons present on the occasion, and who can identify the parties, or by the production and proof of the marriage record and proof of the identity of the parties, or in some other mode, equally direct and clear. In foreign marriages the proof required is much less, and my remarks are entirely applicable to domestic marriages. Marriage may also be proved in civil cases, not criminal in their nature, by reputation, declarations, and conduct of the parties, and other circumstances, usually accompanying that relation.

But though the court allowed the marriage certificate in this case to be read to the jury as collateral proof of the marriage, yet that does not afford good ground for granting the motion for a new trial. The marriage was clearly proved by the evidence of two persons who were present and saw it solemnized, and are well acquainted with the parties, so that, independent of the certificate, the jury were bound to find the marriage duly proved. The evidence of the witnesses present at the marriage proved everything requisite in the case, and was the very highest evidence that could be offered. The reading therefore of the certificate, was an act of no consequence whatever, so far

as the verdict is concerned. It is a well settled principle of law, that a new trial will not be granted, on the ground of the admission of improper evidence on the trial, unless there be probable grounds to believe that injustice has been done by the admission of such testimony. No such ground exists in this case. The court in Crary *vs.* Sprague, (12 Wendell's Rep. 47) says, " To induce the granting of a new trial, there should be strong probable grounds to believe that the merits have not been fully and fairly tried, and that injustice has been done." In Fleming *vs.* Gilbert, (3 John's Rep. 532) the court observed, " When a question on the misdirection arises, the first enquiry is, whether it was in a material point and affected the merits of the case. The court always makes this inquiry, and they are bound, in the exercise of a sound discretion, so to do; otherwise, there would be no end to new trials, and the remedy would be worse than the disease." The courts will not set aside a verdict on account of the admission of evidence which ought not to have been received, provided there be sufficient evidence without it to authorize the finding of the jury. (Bacon's Abridgment, Trial, (L) 1 Taunton, 12.) Other authorities for denying a new trial in cases like the present, are 2 Term. Rep. 4, 3 East 455, 8 East 351, 9 Pick. 176.

It being decided that the admission of the certificate worked no injustice to the defendant, and affords no ground for a new trial, let us proceed to the remaining point made, namely, a new trial should be granted on the ground of excessive damages.

In general, a new trial will not be granted on the ground of excessive damages in an action for criminal conversation. It is an action of *tort* widely different from an action of contract, and one in which the jury have a greater latitude than in most other civil actions. In actions like this, before the court would be warranted in granting a new trial, they must be satisfied that the jury acted under the influence of undue motives, or of gross error or misconception of the subject, and nothing appears to lead us to such a conclusion. Though the damages are higher than I might have been inclined to find, had I been on the jury, yet they are not what I call *excessive* damages, which means such damages as outrage justice. There is nothing in the verdict of $2500 for the plaintiff, to induce me to believe that the jury were influenced by undue motives, or that in finding this sum, they overstepped the bounds of right and reason. That the court has the power to set aside verdicts for excessive damages in actions of *torts* there can be no doubt, but in cases like the present, the party complaining of an excess of damages must make out a very strong case for relief, before a new trial will be granted. In the case of Wilford *vs.* Berkeley, (1 Burr. R. 609,) the court refused to grant a new trial where there was a verdict for the plaintiff with £500 damages, though it appeared by the report of Lord Mansfield, before whom the cause was tried, that the woman had seduced the defendant, and that the defendant was in low circumstances, being only a clerk in the Exchequer, during pleasure, at a salary of £50 a year, only; which was his *whole subsistence.* Lord Mansfield in refusing a motion for a new trial observed: " The jury had all the circumstances under their consideration, and in an action founded upon *tort* they are the proper judges as to the *quantum* of damages " The case of Duberly *vs.* Gunning (4 Term R. 651,) was a harder case if possible than the

last, and Lord Kenyon and a majority of the other judges supported the doctrine laid down in Wilford *vs.* Berkeley. Lord Ellenborough in the case of Chambers *vs.* Caulfield (6 East. 256,) refused to set aside the verdict, where the plaintiff's wife was living separate from her husband, under a deed of settlement, securing to her a separate maintenance, and the jury gave £2,000 damages, because it did not appear that the jury acted under the influence of undue motives or of gross error or misconception. We see nothing in the present case to justify the court in stepping between the defendant and the jury, and the motion is therefore denied. The more modern authorities, (which will be found collected in Bacon's Abridgment under title of Trial (L), sustain the doctrine laid down by Lord Ellenborough.