## MIDLAND VALLEY R. CO. v. EZELL.

No. 2449.   Opinion Filed January 7, 1913.

(129 Pac. 734.)

1.   **CARRIERS**—Shipment of Stock—**Delivery.** Upon the arrival of cattle at their destination, the carrier unloaded them into a receiving pen, then dipped them in oil according to custom, and then

turned them into another pen and held them for several hours after the consignee had demanded possession. While in this last pen, it was alleged that the cattle drank crude oil, which had been allowed to collect there, and died as a result of it. The carrier contended that the cattle had been delivered to the consignee upon their arrival at destination. **Held,** that under the circumstances of this case the cattle had not been delivered until the consignee had been permitted to remove them from the pens of the carrier.

2.    SAME — Injuries to Stock — Evidence of Damages — Market Value. In an action to recover damages for loss of cattle, the only evidence of the value of the cattle was the following: ''Q. What was the value of the cattle? A. $16.80. Q. You mean $16.80 each? A. Yes, sir.'' As the evidence did not show that the witness was qualified to give opinion evidence, and as the evidence did not disclose the market value, and as it did not fix any time or place, it was inadmissible.

(Syllabus by Ames, C.)

*Error from District Court, Osage County;*
*John J. Shea, Judge.*

Action by H. G. Ezell against the Midland Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Edgar A. de Meules* and *Sol H. Kauffman,* for plaintiff in error.

*Boone, Leahy & MacDonald,* for defendant in error.

Opinion by AMES, C. The plaintiff sued the defendant for damages to a shipment of cattle, alleged to have been caused by the defendant's negligence in leaving crude oil in the pens in which the cattle were unloaded for delivery. Plaintiff alleged that the cattle drank the oil and died from the effects of it. The material facts are: That the shipment of cattle originated at Ft. Worth, Tex.; that they were consigned to the plaintiff at Foraker, Okla.; that they were delivered by the Missouri, Kansas & Texas Railway Company to the defendant at Nelagony, Okla.; that the defendant carried them from Nelagony to Foraker; that the plaintiff accompanied them; that upon their arrival at Foraker they were unloaded into a receiving pen. From this they were dipped, and then delivered into a large pen or trap, containing about 30 acres, where they were held for several hours before

the plaintiff was allowed to remove them.   The dipping vat is about two and one-half or three feet wide and twenty feet long. It is filled with crude oil, and each steer was driven in at one end and completely submerged in the oil, and then swam out at the other end, where he stood on a drainage platform, so that the oil might drip off of him and flow back into the dipping vat. He was then passed into this large trap.   The dipping was done by the defendant.   Some of the oil running from the cattle, instead of being conveyed back to the dipping vat, was permitted to escape into the trap into which the cattle were removed, and there it formed in pools and was allowed to remain standing. The plaintiff's cattle drank this oil, and there is testimony tending to show that it resulted in their death; some of them dying within a few days, and others lasting longer, so that the last of them died six months after dipping.

The defendant argues at great length that there is a fatal variance between the cause of action alleged and the cause of action proven, in that the defendant is sued as a common carrier, while the recovery is for breach of a contract to dip properly; but the record does not support this contention.   The defendant is sued for damages for injuries to the cattle resulting from the negligence of the defendant in allowing oil to be in the pen, and the recovery is on the same theory.

It is also urged that the injuries sustained by the cattle were after they had been delivered to the plaintiff, but the evidence does not bear out this contention.   It is the duty of a carrier to deliver the freight to the consignee at the place to which it is addressed, in the manner usual at that place (Comp. Laws 1909, sec. 450); and it appears from the evidence as a whole that in handling quarantine cattle before delivery the railroad company dips them, and in this case it received compensation therefor, which is probably usual.   It also appears that after these cattle were dipped the plaintiff immediately paid the freight and dipping charges and demanded the possession of the cattle, so that he could remove them from the pens, but that the defendant declined to permit him to remove them for several hours, under a mistaken idea that under the quarantine rules the cattle should be

dipped twice. Under these facts, therefore, it cannot be said that the cattle had been delivered to the plaintiff.

The only assignment of error in the case that presents any difficulty is as to the evidence relating to the damages sustained by the plaintiff. The plaintiff's testimony is to the effect that he had lived at Foraker for about four years, and was engaged in the cattle business. The only testimony in the record tending to prove the plaintiff's damages is the following from his evidence: "Q. What was the value of the cattle? A. $16.80. Q. You mean $16.80 each? A. Yes, sir." This evidence was objected to as incompetent, irrelevant, and immaterial. This objection, while general in its terms, is by statute admitted to cover all matters ordinarily embraced within such objections, and further specification is unnecessary. Comp. Laws 1909, sec. 5863. Upon making such a general objection, the statute provides that the court or opposing party may inquire for a more specific statement of the ground of objection; but as that was not done in this case we are compelled to assume that every legitimate ground of incompetency was considered by the court. The plaintiff's correct measure of damages was the market value of the cattle at Foraker at the time involved (4 Elliott on Railroads, sec. 1738), and this question was objectionable in three particulars: It did not ask for the market value. It did not fix any time. It did not fix any place. Neither had the witness qualified himself to answer the question, although upon the theory that he was a cattleman and had been engaged in the business for a number of years, and was the owner of the cattle, we might overlook this defect, if it were the only one. *C., O. & G. Railroad Co. v. Deperade,* 12 Okla. 367, 373, 71 Pac. 629; *Chandler Bros. v. Higgins,* 156 Ala. 511, 47 South. 284; *E. T., V. & G. R. Co. v. Watson,* 90 Ala. 41, 44, 7 South. 813; *Berry v. Ingalls,* 199 Mass. 77, 85 N. E. 191; Lawson on Expert and Opinion Evidence, 15, 19. We might also overlook the objection that the inquiry was not for the market value of the cattle, if that was the only defect, under the holding in *Filson v. Territory,* 11 Okla. 351, 67 Pac. 473, that when a witness testifies generally to the value of an article in common use it would be assumed that

he means the market value, unless it appears to the contrary. However, that was a prosecution for larceny, and it is possible that market value was not the sole criterion in determining whether the larceny was grand or petit. *Vandegrift v. State,* 151 Ala. 105, 43 South. 852. *Coyle v. Baum,* 3 Okla. 695, 718, 41 Pac. 389, which was a civil case, is to the same effect as *Filson v. Territory, supra.*

The evidence in this case, however, is not only subject to the defects of failing to qualify the witness and of omitting all reference to market value, but also omits all reference to time and place, so that the naked question is presented whether the court can presume that the witness was qualified, that the market value was meant, and that the right time was implied and the right place referred to. In this case it appears form the plaintiff's testimony that he bought these cattle at Ft. Worth, upon the recommendation of a friend; that some of them were yearlings and some two year olds; that two year olds were worth more than the yearlings; that he did not know how many were yearlings, nor did he know how many were two year olds; and that the cattle had just been shipped from Ft. Worth to Foraker. We therefore cannot say whether the value stated by the plaintiff was the value of the cattle at Ft. Worth or Foraker. We cannot say whether it was the value at the time of the injury or one week or two weeks or six months thereafter, although the cattle were dying during this entire length of time. In *St. L. & S. F. R. Co. v. Young,* 30 Okla. 588, 120 Pac. 999, it was held that evidence of a much higher class than this was, perhaps, not the best class of evidence obtainable on the subject; but the evidence there was held to be competent, although it was expressly pointed out that the market value of the cattle at the point of origin was taken from the consideration of the jury by the court's instructions.

The language of Justice Hayes, in delivering the opinion of the court in *Scott v. Vulcan Iron Works Co.,* 31 Okla. 334, 342, 122 Pac. 186, 190, is directly applicable to the case at bar. There the testimony was as to the usable value of certain machines, and in discussing this subject it is said:

"The witnesses were asked upon direct interrogatories if they were acquainted with the reasonable usable value per day of machines of this character. In response to these interrogatories the witnesses answered in the affirmative, and stated in answer to further interrogatories that the usable value was $15 per day; that said amount was the rental value of such machines. Objection was made to the introduction of this evidence, upon the ground that the witnesses were not required to qualify themselves as to their knowledge of the usable value of the machines in the locality where the machine involved was detained by defendant, or at the time of its detention. We think there can be no doubt as to the correctness of defendant's contention that the measure of damages is to be determined by the reasonable usable or rental value of the machine at the time and place where it was detained by defendant, to which place it had been by plaintiff shipped for use; and, if the answers of the witnesses to the direct interrogatories referred to above constituted all the evidence of these witnesses upon this matter, the action of the court in refusing to sustain defendant's objection to this evidence would constitute prejudicial error; but upon the cross-interrogatories these same witnesses testified that the market rental value of steam shovels of the character here involved was general and did not vary in different localities, nor because of the difference in the nature of the soil in which they were used; that the usable and rental value in the Indian Territory, where the shovel was used, was the same as in other states; that it was no greater or less in one section of the country than in another. They testified to having had experience in handling such shovels, using and renting the same, and to their knowledge of the general market usable value. Under this evidence we think the answers of the witnesses objected to were rendered competent, and it was not error to refuse to strike them out."

It is thus seen that the court there held that the admission of the evidence of usable value, without a limitation as to the time and place, was reversible error; but the error was cured by the cross-examination of the same witnesses, when it was disclosed that they were testifying with reference to the correct time and place. In the case at bar, however, the cross-examination did not cure the defect in the original examination, but, so far as it extended, emphasized it, as counsel for defendant inquired of the plaintiff, on cross-examination, whether it was not a fact that these cattle, when purchased at Ft. Worth, were

"tailings," and this testimony was excluded. As tending to support this rule, see *Freeman v. Taylor* (Tex. Civ. App.) 130 S. W. 733, and *Galveston, H. & S. A. Ry. Co. v. Giles* (Tex. Civ. App.) 126 S. W. 282.

It is also a notable fact in this case that plaintiff's counsel do not undertake to defend their action in asking this question without limiting it in any way, nor the action of the trial court in admitting the evidence.

For the error in the admission of evidence, the judgment of the trial court should be reversed and the case remanded.

By the Court: It is so ordered.