FENDER, *Adm'r, et al.* v. SEGRO *et al.*

3173.   Opinion Filed November 18, 1913.

Rehearing Denied December 23, 1913.

(137 Pac. 103.)

1. **APPEAL AND ERROR**—Objections Below—Sufficiency—Admission of Evidence.   Simply objecting to the admissibility of evidence, without assigning the statutory grounds named in section 5070, Rev. Laws 1910, or any other ground of objection, is not such an objection as will cause this court to review the action of the trial court in overruling the purported objections.

2. **MARRIAGE** — Existence—Question for Jury.   The existence of facts essential to a valid marriage is to be determined by the jury trying the case.

3. **SAME.**   It was within the province of the jury to say whether a marriage was to be inferred from cohabitation and reputation.

4. **SAME**—Cohabitation and Reputation—Indians.   Cohabitation and reputation do not constitute marriage, but only evidence tending to raise a presumption of marriage from circumstances.   In any case the cohabitation must not be meretricious, but matrimonial, to raise the presumption.

5. **SAME**—Presumption.   Such presumption of marriage does not arise where it is not shown that there was a recognition of the

Opinion of the Court.

marriage relation by the parties and a holding out of each other as husband and wife respectively.

(Syllabus by Sharp, C.)

*Error from District Court, McIntosh County;*
*Preslie B. Cole, Judge.*

Action by Bettie Segro against Eli Segro and Willie Segro, minors under the age of fourteen years, and B. B. Bray, Oscar Easley, Claude Bray, Frank Shepard, W. M. Linley, Lewis Gray, and J. E. Smith, tenants of said above-named defendants. From a judgment in favor of plaintiff, defendants H. M. Fender, administrator of the estate of Eli Segro (who died after the institution of suit), and Willie Segro, through his guardian *ad litem,* H. M. Fender, bring error.    Affirmed.

*Charles Whitaker, W. C. Franklin,* and *P. J. Carey,* for plaintiffs in error.

*Charles A. Cook* and *Fred P. Branson,* for defendants in error.

Opinion by SHARP, C.   On the 12th day of September, 1910, plaintiff brought suit against the above-named defendants to recover the possession of 360 acres of land in McIntosh county.   It was alleged in plaintiff's petition that she was a duly enrolled full-blood member of the Creek Tribe of Indians, and that of the lands in question 120 acres was allotted to her father, Tom Segro, 120 acres to her brother, Chepahnoche Segro, and 120 acres to her sister, Susan Segro; that each of said allottees was dead; and that plaintiff was the sole surviving heir at law of the said decedents, each of whom died intestate.   On the part of the defendants, Eli and Willie Segro, it was contended that they were the children of Tom Segro, and his sole surviving heirs at law, as well as the sole surviving heirs at law of Chepahnoche Segro and Susan Segro, deceased.

No objection is made to the court's instructions to the jury; the only errors assigned being the admission of evidence on the part of the plaintiff and the claim that the verdict of the jury is not supported by the evidence.

While the witness Louisa Gray was on the stand, she was asked the following, among other, questions: "What relation did Tom Segro have to Sarah Segro?" "Did Tom and Sarah hold themselves out to the community as man and wife?" These questions were each objected to by counsel for defendants, but no grounds of objection were assigned. Our statute controlling the examination of witnesses provides that where any party desires to object to any question put to a witness, either before a court or tribunal or upon the taking of depositions upon notice, the ordinary objections of incompetency, irrelevancy, or immateriality shall be deemed to cover all matters ordinarily embraced within such objections, and it shall not be necessary to specify further the grounds of such objections or to state the specific reasons whereby the question is so objectionable; but the court or opposing counsel may inquire of the objector wherein the question is so objectionable, and the objector shall thereupon state specifically his reasons or grounds for such objection. Rev. Laws 1910, sec. 5070. This statute became effective March 16, 1905. Sess. Laws 1905, p. 327. Prior to its adoption, it had been held that this court would not as a general rule consider objections to the introduction of evidence, unless such objections were made to the trial court at the time the testimony was offered, and that the objections made must be sufficiently certain and definite to advise the court of the specific grounds of objection.

In *Long Bell Lumber Co. v. Martin,* 11 Okla. 192, 66 Pac. 328, the objection made to the introduction of a deed was upon the grounds of incompetency, irrelevancy, and immateriality, and it was held that the objection thus made in general terms was not sufficient to call the attention of the trial court to the objection urged on appeal, that it did not appear that the grantor had authority to execute the deed as an attorney in fact. In *Enid & Anadarko Ry. Co. v. Wiley et al.,* 14 Okla. 310, 78 Pac. 96, it was said that an objection that the evidence was "incompetent," without specifically stating the grounds upon which the objection was based, was too indefinite to present any question to the trial court. In *Conklin v. Yates et al.,* 16 Okla. 266, 83 Pac. 910,

it was held that an objection to the introduction of testimony should state the precise grounds of objection.

Such was the law at the time of the enactment of the foregoing statute. It would be doing violence to the language of the act and would be a grave injustice to trial courts and opposing counsel to permit an attorney to simply object and afterwards on appeal elaborate upon the grounds of his objection. If there be reason for an objection, it should be stated at the time the objection is made; at least the very liberal requirement of the statute must be observed, before error in the admission of testimony can be urged on appeal. The exact question does not appear to have been before this court under the present statute, though attention was called to the statute in *Midland Valley Ry. Co. v. Ezell,* 36 Okla. 517, 129 Pac. 734; but it was before the Criminal Court of Appeals in *Price v. State,* 1 Okla. Cr. 358, 98 Pac. 447, where it was said by Justice Furman, in a case where a like objection was made:

"Whatever this court may think upon this subject, we are bound by the statute above quoted. It will be seen that the counsel for defendant simply said, 'Objected to.' This does not comply with the statute, and therefore does not amount to any objection. The better and the safer practice is to point out the specific objection relied upon. But the objection must at least go as far as the statute provides; otherwise it cannot be considered by this court. We are not willing to relax the rules relating to objections to evidence any further than the statutes require us to do. So we will not consider this matter, holding that no legal objection was made."

The rule is one of general application and is announced in 38 Cyc. 1378, as follows:

"The general rule is that an objection to evidence must state the specific grounds on which it is based; that an objection which states no grounds therefor will not suffice. This rule is so well settled, and has been applied with such frequency, that the citation of authorities is almost useless. Its operation is the same whether the evidence is oral or documentary, or whether the objection is to the form or substance of a hypothetical question asked an expert."

While the rule is there stated perhaps somewhat broader than authorized by our statute, in the present case, where no ob-

jection whatever was given, it announces a rule in full harmony with our view of the law.

We think there was sufficient evidence to warrant the verdict returned by the jury. The witness Louisa Gray, on behalf of the plaintiff, testified that Tom Segro had four children by his first wife, Anna; that of his marriage to Sarah one child, Bettie, was born; that these were the only children that Tom had at the time of his death; and that she had known him for a long time, ever since he was a boy, during the greater part of which time they lived near each other. The testimony of Vicey Sevier, though a half-sister of Eli and Willie, was of little, if any, value as an aid to the jury in determining the character of the relationship that existed between Tom Segro and Julia Beavers. Kate Vann, being asked whether Tom and Julia lived together as husband and wife, stated that she did not know they were ever married, and being further asked: "Q. Did they ever live together as husband and wife?" answered, "A. I suppose so; that's what they claim." She testified further that Tom would go to Julia's house and sleep there and get wood for her pretty near every night, and that this was about two or three years before Eli, the oldest child, was born; that she (the witness) raised Eli, and that Tom Segro was his father and treated him as his child; that Tom and Julia lived together. On cross-examination she testified that, at the time Tom chopped wood for Julia, he had a home across Gray's creek, but that he would go there and sleep with Julia and chop wood for her, and then go back; that Tom kept this up until he died. She testified further that Julia Beavers was a Creek freedwoman. Vicey McNac, an enrolled freedwoman, and half-sister of Eli and Willie, testified that she was a daughter of Julia Beavers and lived with her aunt, and that, before moving, her mother and Tom Segro lived together as husband and wife; that of nights Tom would stay with her mother, and had been doing so for a long time, beginning before Eli and Willie were born. This witness was an enrolled freedwoman and did not know her own age. She testified that Eli and Willie were enrolled as freedmen, and that her mother was enrolled under the name of Julia

Beavers; that the farm where Tom Segro lived was about two miles from where her mother lived; that, during the time Tom was visiting her mother, the latter had a child by one Thomas Adkins; that she did not know whether her mother had a child named Smith.

The Creek law of marriage and divorce was neither pleaded nor proved; nor was there testimony offered as to any tribal customs, pertaining to marriage or divorce among the Creeks, save that Willie McComb, a former member of the Supreme Court of the Creek Nation, testified that, according to the Creek customs, the wife at marriage did not change her former name, and the children were given but one name.

The jury's verdict could only have been reached through a belief that Julia Beavers and Tom Segro were not shown to have been married under either the Creek laws or customs at the time controlling and in force in the Creek Nation. The mere fact that Tom, who at or about the time had a living wife, was maintaining relations with Julia Beavers was far from conclusive evidence of the fact that he and Julia were ever married; and the testimony offered to prove marriage to Julia is not of that character that is calculated to satisfy either court or jury. An irregular, limited, or partial cohabitation is not sufficient to create a presumption in favor of marriage. It must be continuing and complete and such as is usual between persons lawfully married. There are a number of circumstances, shown by the testimony of these witnesses, that cast a serious doubt upon the all-important fact of a marriage between the putative father and Julia. Tom Segro was a full-blooded Creek Indian; Julia Beavers was a Creek freedwoman, and Eli and Willie enrolled Creek freedmen. The evidence mainly tends to show that Tom would go to Julia's house at night and sleep with her, although there is evidence that he made some provision for her and her children, Eli and Willie. At the same time, Julia had another child by one Thomas Adkins, who took his father's name. In one place Vicey McNac testified that the Adkins child was older than Eli and Willie, and in another she states that he was younger. The nature of the relationship existing between Tom and Julia was

a question of fact for the jury. If that relationship was meretricious, and if under the tribal laws Julia and Tom were not husband and wife, plaintiff's right to recover must stand, for there can be no reasonable question, from the testimony, but that Tom Segro and Sarah were husband and wife, and that the plaintiff Bettie was the legitimate offspring of their union. The issue whether Tom and Julia were ever married was submitted to the jury, and the effect of its verdict was to find that the relationship that existed between Tom and Julia was adulterous, and that no rights to the property in controversy could be acquired by the progeny.

The position of counsel that the jury capriciously disregarded the evidence is therefore, we think, not well taken. It is difficult to establish a rule which will regulate and limit the discretion of a court or jury in the degree of credit to be given to the testimony of witnesses. Much must depend on the particular circumstances of each case. While juries may not arbitrarily disregard the uncontradicted testimony of disinterested witnesses of fair fame, where it contains no inherent improbability, yet where it is incumbent upon a litigant to affirmatively prove a given state of facts, and the evidence introduced for that purpose is lacking in probative value and of the character we have seen, it is within the province of the jury to consider it as insufficient and to find against the one asserting the claim.

Marriage, it is true, may be proved by circumstantial evidence; and, since the presumption is in favor of marriage and against concubinage, the fact that a man and woman have openly cohabited as husband and wife for a considerable length of time, holding each other out and recognizing and treating each other as such by declarations, admissions, or conduct, and are accordingly generally reputed to be such among their relatives and acquaintances and those who come in contact with them, may give rise to a presumption that they have previously entered into an actual marriage, although there may be no direct testimony to that effect. The existence in fact of a marriage, and the existence of facts essential to a valid marriage, are questions for the jury, and it is within the province of the jury to say whether

a marriage is to be inferred from cohabitation and reputation. *Doe v. Roe et al.*, 2 Houst. (Del.) 49; *Mickle v. State* (Ala.) 21 South. 66; *Apong v. Marks et al.*, 1 Hawaii, 83; *Jackson et al. v. Jackson*, 80 Md. 176, 30 Atl. 752; *Turner v. Williams*, 202 Mass. 500, 89 N. E. 110, 24 L. R. A. (N. S.) 1199, 132 Am. St. Rep. 511; *Lorimer v. Lorimer*, 124 Mich. 631, 83 N. W. 609; *Adair v. Mette*, 156 Mo. 496, 57 S. W. 551; *Richard v. Brehm*, 73 Pa. (22 B. F. Smith) 140, 13 Am. Rep. 733; 26 Cyc. 898.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.