[Chandler Bros. v. Higgins.]

# Chandler Bros., *v.* Higgins.

## *Detinue.*

(Decided June 30, 1908.   47 South. 284.)

1. *Evidence; Opinion Evidence; Value.*—One may testify as to the value of a horse and wagon without being shown to be an expert.

2. *Fraudulent Conveyances; Evidence.*—The issue being whether a sale of a horse and wagon was a fraud on creditors, it is competent to ask the buyer on cross examination if it was not a fact that he knew of the insolvent condition of the seller, and if he had paid nothing, and that it was the understanding that he was to pay nothing; if such agreement had not been made in the presence of a named person, and it was not agreed that the seller was to file a claim of exemptions, and execute a bill of sale for the horse and wagon in order to cover up his title because he had more property than he could hold under his exemptions, and if he had not suggested to the seller the giving of the bill of sale, and the other questions set out in the opinion.

3. *Same: Knowedge and Intent of Seller.*—The seller's purpose in making the sale is immaterial where a party is a bona fide purchaser for value without notice.

4. *Same; Evidence.*—On an issue as to whether or not the sale to plaintiff was in fraud of creditors, it was competent to show admisisons by plaintiff to defendants and others that the property sold was not really his, but belonged to the debtor; and it was competent for defendant to show that plaintiff knew that the debtor who sold plaintiff the horse and wagon had sold the same to defendant and that plaintiff said it was all right.

5. *Evidence: Opinion Evidence; Conclusion.*—It is not proper to show by a witness what was the purpose of the parties in executing a bill of sale as it is at most but a conclusion of the witness.

6. *Trial: Reception of Evidence; Re-opening Case.*—After the evidence has been closed, it is within the discretion of the trial court whether it will re-open the case and permit the introduction of other testimony, and this court will not review the action of the court in this regard unless abused.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

Detinue by M. M. Higgins against Chandler Bros. for a horse and wagon.   Judgment for plaintiff, and defendants appeal.   Reversed and remanded.

[Chandler Bros. v. Higgins.]

The plaintiff claimed title under a bill of sale which he claims to have acquired from one G. A. Gillette on June 4, 1904. The defendants also claim the property on a purchase from G. A. Gillette on August 21, 1904, together with a stock of wall paper. The defenses sought to be made were that the sale from Gillette to Higgins was made for the purpose and with the intent to hinder, delay, or defraud the creditors of said Gillette, and that Higgins knew of the fraudulent intent and purposes of Gillette and participated in them, and that the sale or purported sale by Gillette to Higgins was a sham, and not intended by either Gillette or Higgins as a sale, and that if there was a sale, and Gillette afterwards sold the property, with the wall paper business, to the defendants without the authority of plaintiff, the plaintiff, after being fully informed of all of the facts with reference to the sale, ratified and confirmed. The other facts sufficiently appear in the opinion. This case was formerly reported in 39 South. 576.

Estes, Jones & Welch, for appellant. The sale was voluntary and void as to purchasers.—*Gilliland v. Fenn,* 90 Ala. 230; *McDermott v. Eborn,* 7 South. 551. The consideration may be inquired into.—*Means v. Hicks,* 65 Ala. 242. Counsel discuss other assignments of error, but without citation of authority.

Pinkney Scott, for appellee. Counsel discusses assignments of error, but without citation of authority.

Haralson, J.—This is an action of detinue, for a horse and wagon, brought by the appellee, Higgins, against the appellants, Chandler Bros.

The first, second, and eighteenth assignments of error are without merit. It is unnecessary that a witness should be an expert to testify as to the value of a horse

and wagon. If the witness did not know such value, it could have been brought out on cross-examination and the testimony excluded.—*E. T., V. & G. R. R. Co. v. Watson,* 90 Ala. 44, 7 South. 813, and authorities there cited.

The plaintiff, Higgins, in his direct testimony had said that he bought the horse and wagon sued for from one Gillette, and later on, introduced a bill of sale dated the 14th day of June, 1904. The plaintiff having traced his source of title to the transaction with Gillette, it then became a question—and, in fact, the main question in this case—whether or not the transaction with Gillette was valid. The defendants claimed that it was a fraudulent conveyance, made for a fraudulent purpose, and that the fraud was participated in by the plaintiff. It was, therefore, competent for either party to bring out any facts showing the real nature of the transaction between the plaintiff and Gillette.

The court was in error in sustaining objections to the following questions propounded to the plaintiff on cross-examination:

"Isn't it a fact that you never paid Mr. Gillette anything for the horse and wagon?" "Isn't it a fact that it was understood between you and Mr. Gillette that you were not to pay anything for the horse and wagon?" "Isn't it a fact that you bought the horse from Mr. Gillette, and took the bill of sale from him without paying him one cent for them, and that, too, at a time when Mr. Gillette, to your own personal knowledge, was insolvent and was being sued by his creditors?" "Isn't it a fact that you and Mr. Gillette made the agreement with reference to his giving you the bill of sale for the horse in the presence of Miss Ivey Skews one day in the wall-paper store of Mr. Gillette, just before he gave you the bill of sale, and wasn't the agreement that Mr. Gillette was

C 33

to file a claim of exemption, claiming all the property he could as exempt, and execute the bill of sale for the horse and wagon simply for the purpose of covering up the title of Gillette to the horse and wagon, so as to enable him to hold it from his creditors, because he had more property than the law allowed him to hold as exempt?" "Isn't it a fact that you suggested the idea to Mr. Gillette to give you a bill of sale in order to enable Mr. Gillette thereby to cover up his title to the property, one day just preceding the preparation and delivery of the bill of sale, while you and Mr. Gillette were in the presence of Miss Ivey Skews in Gillette's wall-paper store?" "Isn't it a fact that you were at the mouth of the alley on Nineteenth street, between Third and Fourth avenues, on the sidewalk with Mr. Gillette and Mr. M. B. Chandler, one of the defendants, next to the wall-paper store, and saw the horse and wagon in question standing by the back of the store in the alley; and while there, didn't you say to Mr. Chandler that you had a bill of sale for that horse and wagon, and when you said this didn't Mr. Chandler say to you, "Didn't you understand that they were to go in the sale of the wall-paper business made by Mr. Gillette to them?" and didn't you reply to him that you understood that it was all right, but that, 'By God, you wanted your money'?" "Isn't it a fact that you commenced running the wall-paper business of Mr. Gillette soon after the bill of sale was delivered to you by Mr. Gillette under a contract or agreement with Mr. Gillette to the effect that you were to run the business for what profit you could make out of it, obligating yourself to keep his stock up in value to what it was at the time you commenced under the agreement, which was simply the property Mr. Gillette had claimed exempt about the time you got the bill of sale?" "Isn't it a fact that you were in the wall-

paper and paint store late in the afternoon or night on which the defendants had bought out the business and horse and wagon from Mr. Gillette, there in the presence of both defendants, and after you had been informed all about the sale having been made, didn't you say to him then and there, in the presence of the two defendants, that it was all right about him selling, that you wanted your part of the money, and asked Gillette if he had placed the money in the bank so you could both check on it?"

All of these questions were clearly competent, and called for facts relating to the transaction between the plaintiff and Gillette tending to show the character of the transaction between them.

The court did not err in sustaining objections to the other questions propounded to the plaintiff on cross-examination, since each of them asked the wtiness to disclose Gillette's purpose in making the sale. If plaintiff was a bona fide purchaser for value of the property without notice, it is immaterial what the purpose of Gillette was in making the sale. His answers to such questions would have also been his mere conclusions.

The court was also in error in refusing to permit the witness Miss Ivey Skews to testify as to the conversation between plaintiff and Gillette about the giving of the bill of sale for the horse and wagon; about the plaintiff having suggested the giving of the bill of sale in order to keep the creditors from finding out that it was Gillette's property; and the condition of Gillette's affairs and his solvency or insolvency, and whether or not plaintiff paid Gillette anything for the horse and wagon. All these questions called for facts throwing light on the transaction as to whether or not the sale of the horse and wagon to plaintiff was a bona fide transaction or a mere sham as contended by defendants. The court did

[Chandler Bros. v. Higgins.]

not commit any error in sustaining objections to questions propounded to this witness asking her the purpose of the bill of sale. It was incompetent for her to testify as to the purpose of either of the parties. It would have, at most, been her opinion.

There are numerous other objections and exceptions to the rulings of the court on the testimony of various witnesses to the same effect. We deem it unnecessary to review all of them, as what we have said should be a sufficient guide to the court when the case is again tried.

It was competent for the defendants to introduce testimony showing admissions made by the plaintiff to defendants and other parties, that the horse and wagon were really not his, but belonged to Gillette. It was also competent for defendants to show that plaintiff knew that Gillette had sold them the horse and wagon, and that he had said it was all right.

It was discretionary with the court, after the evidence had been closed, as to whether or not it would allow the introduction of further testimony by defendants, and this court will not review that discretion. The question will probably not arise on another trial.—*Morrissett v. Wood*, 123 Ala. 384, 26 South. 307, 82 Am. St. Rep. 127.

Reversed and remanded.

TYSON, C. J., and DOWDELL and SIMPSON, JJ., concur.