# Birmingham R. L. & P. Co. *v.* Saxon.

### *Damages for Death from Collision.*

(Decided April 18, 1912.  Rehearing denied June 29, 1912.
59 South. 584.)

1. *Street Railways; Persons on Track; Contributory Negligence.*—
Although the driver of the street car was negligent in failing to
slacken speed after he saw a person in dangerous proximity to the
track, yet if afterwards such person, with knowledge that the car
was rapidly approaching and in dangerous proximity to him, and
that it would be impossible for him to cross the track without being
struck, stepped onto the track at a time when the car was so close
that no preventive efforts of the motorman could have avoided
striking him, such person was guilty of such contributory negligence
as relieved the street car company from liability.

2. *Same.*—A plea setting out the elements of contributory negli-
gence in intestate's attempt to cross the track in front of an ap-
proaching car, which states that, "fully appreciating his said peril,
he attempted to cross" sufficiently shows that at the time deceased
attempted to cross the track he appreciated his peril, and charges
contributory negligence at a time subsequent to the negligence of
defendant.

3. *Same; Evidence.*—Where the action was for the death of a
person hit by a car, it was competent as showing the degree of
negligence of defendant's servants in running at a high rate of
speed, that the place where the accident happened was a thickly
populated neighborhood, where there were numbers of people on
both sides of the track, and also whether the station there was a
regular stopping place, and at what hour of the day the crossing
was most used.

4. *Same.*—Testimony as to whether there was anything to prevent
the motorman in charge of the car from seeing one coming out of a
store and attempting to cross the track, was competent in an action
for damages from a collision with the car.

5. *Same.*—Where the material question was not what the particu-
lar motorman could do, but what a skillful one similarly situated
could have done, it was proper to exclude the answer of the motor-
man to the effect that what he did was all he could do.

6. *Same; Jury Question.*—Whether the intestate was guilty of con-
tributory negligence subsequent to that of defendant's servants was
a question for the jury under the evidence in this case.

7. *Same; Willful and Wanton Negligence; Evidence.*—Under the
evidence in this case the general charge to find for defendant as to
the count in the complaint charging willful, wanton or intentional
negligence was properly given as there was nothing in the evidence
to show that the injury was so caused.

8. *Same; Perilous Position; Jury Question.*—Under the evidence in this case, it was a question for the jury whether plaintiff's intestate was in a position of peril before some part of his body got on or was near the track on which the car ran that struck him.

9. *Same; Instructions.*—A charge asserting that the motorman was only required to use such means as were at hand, in a skillful manner, to stop the car, after becoming aware of intestate's peril, was properly refused for failing to hypothesize the prompt use of the means.

10. *Same.*—A charge asserting that even if the jury believed that the motorman saw plaintiff's intestate running towards the tracks, he could assume that intestate would stop and listen for the car before actually going on the track, and need not make any effort to stop the car until the circumstances indicated that intestate would not stop, look and listen, was properly refused for a failure to state at what distance intestate was from the track when seen running, and was also properly refused because the word "even" carries an intimation against the supposition.

11. *Same.*—A motorman in charge of a car can presume that a person, who apparently sees the approaching car, will remove himself from danger, until by his conduct he shows that it was not his purpose so to do, and need not begin to stop a car until it becomes reasonably manifest that such person will not or cannot extricate himself from his peril.

12. *Pleading; Conclusions; Contributory Negligence.*—A plea alleging contributory negligence in that the intestate, "negligently attempted to cross the track * * * without looking or listening for the approach of a car," and "with knowledge of the danger of so doing, and well knowing that to so cross the track * * * * would imperil and endanger his life," states only the conclusions of the pleader, and was bad on demurrer.

13. *Evidence; Collective Fact.*—The fact that the place where the accident happened was a thickly populated neighborhood where there were a number of people on both sides of the track, and whether the station there was a regular stopping place, were collective facts that may be so stated by any witness.

14. *Opinion; Qualification of Witness.*—Where a witness testified that he had been a motorman between seven and eight years and had had experience in stopping cars, he was properly permitted to testify as to the best and quickest way to stop a car.

15. *Same; Discretion of Court.*—Where a motorman of a street car testified that he had been runnig a car about two months and stated what he did to stop the car, it was within the discretion of the court to permit him to state that what he did was all he could do, and the evidence could have been properly excluded on the theory that the witness was not competent or qualified to give an opinion.

16. *Same; Illustrative.*—A motorman testifying as to the means and method of stopping a car may be permitted to illustrate with his hands the time it would take him to go through the various motions necessary to stop or check up the car, as it would give the jury a better idea as to what was to be done than they could obtain from mere descriptive words.

17. *Same; Weight and Sufficiency.*—A verdict for a plaintiff is not warranted in a civil case where the minds of the jurors are in a state of confusion as to whether the plaintiff should recover.

18. *Appeal and Error; Harmless Error; Evidence.*—Where the answers are favorable to appellant he cannot complain of the admission of the evidence.

19. *Same; Objection Below; Necessity.*—Although a question was objected to and permitted to be answered it cannot be relied on as error where the ground of objection was not specified.

20. *Same; Waiver of Ground Not Included.*—Where the objection interposed in the court below to the evidence was that it was illegal, irrelevant, immaterial, it cannot be insisted on appeal that the ruling was erroneous because the question did not hypothesize facts in issue, and limit the inquiry to the character of the car, etc., as the statement of the particular ground was a waiver of the other.

21. *Same.*—A court will not be put in error for permitting a question to be answered where no motion was made to exclude the answer, and the answer was not responsive.

22. *Same; Rehearing; Disrespectful Brief.*—Where a brief filed is of a disrespectful and improper character, it will be stricken from the files and an application based thereon will be dismissed.

23. *Trial; Admission of Evidence; Sur-rebuttal.*—Although the reopening of testimony after it had been closed, or the permitting of sur-rebuttal testimony as to matters which might have been inquired into on the former examination, is ordinarily within the discretion of the trial court, yet where the plaintiff produced in rebuttal testimony of motorman as to what instructions were given them by their instructor on the quickest way to stop a car, and such testimony was in conflict with the testimony of the instructor, the instructor should have been permitted to qualify, contradict or explain such statement.

24. *Charge of Court; Assumption of Fact.*—Where the evidence was in conflict as to whether reversing was the best way to stop a car, a charge assuming such to be the case was properly refused.

25. *Same; Covered by Those Given.*—A charge may be properly refused where it is substantially covered by written charges given.

(Dowdell, C. J., Anderson, McClellan, Mayfield, Sayre and Somerville, dissent in part.)

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by W. D. Saxon, as administrator against the Birmingham Railway, Light & Power Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 3 is in subsequent negligence for a negligent failure of the servants of the defendant to use all means

at their command to prevent the car from running against plaintiff's intestate after becoming aware of his peril, when, by the use of such means, the accident might have been avoided. The plaintiff's intestate was crossing the track at a public crossing, as alleged in count 3, when he was struck and killed.

Plea 5 is as follows: "Defendant says that plaintiff's intestate voluntarily left a place of safety by the side of defendant's track at said crossing, and from which position by the said side of the track, at the said crossing, his view of the approaching car was unobstructed, and, well knowing that defendant's car was rapidly approaching, he measured the distance and took the chances of crossing the track before the car reached him, and attempted to cross said track immediately in front of the moving car, and in such close proximity thereto that no preventive effort on the part of defendant's employees in charge of said car could have prevented injury to him, and by his own gross and reckless negligence and wanton conduct in this regard he proximately contributed to his injury and death."

(6) "Defendant says that plaintiff's intestate was himself guilty of negligence which proximately contributed to his injury and death, which negligence consisted in this: The plaintiff's intestate attempted to cross the said track in front of defendant's moving car without looking and listening for the approach of a car, and well knowing that said car was approaching, and in such close proximity that no preventive effort on the part of the employees or servants in charge of said car could have prevented the injury after the peril of plaintiff's intestate became known to them, or after he stepped on the track on which said car was moving."

(N) "The defendant says that plaintiff's intestate was himself guilty of negligence which proximately

contributed to his injury and death in this: That said intestate went upon or dangerously near, or attempted to cross, the railway track of defendant in front of and in dangerous proximity to an electric car, which was then and there approaching on said track, without looking for said car."

(11) "The defendant says that plaintiff's intestate was himself guilty of negligence which proximtaely contributed to his alleged death in this: Said intestate, after having looked for defendant's said car, and having seen the same then and there approaching on said track, nevertheless negligently went upon or dangerously near said track in front of and in dangerous proximity to said car, which was then and there approaching on said track."

(12) "Defendant says that plaintiff's intestate was himself guilty of negligence which proximately contributed to his alleged death in this: Said intestate went upon or dangerously near, or attempted to cross, the railway track of defendant in front of, and in dangerous proximity to an electric car, which was then and there approaching on said track, and negligently failed to listen for said car before doing same."

(13) Same as 12.

(14) "Defendant says that plaintiff's intestate was himself guilty of negligence which proximately contributed to his alleged death in this: Said intestate approached said track, for the purpose of crossing it, at the point at which he was struck by said car, and before going upon said track for such purpose did not stop and look for said car, and at the time that intestate voluntarily went upon said track said car was approaching said point, and said intestate could have seen said car in time to have avoided being struck by it, had he stopped and looked for it before going upon said track."

(13) "Contributory negligence in this: Plaintiff's intestate negligently attempted to cross the track of the defendant, aforesaid, without looking or listening for the approach of the said car of the defendant, then and there approaching on said track in dangerous proximity to him; and defendant avers that the plaintiff's intestate thus negligently attempted to cross the track of the defendant, as aforesaid, with knowledge of the danger of so doing, and well knowing that to so cross the said tracks, as aforesaid, would imperil and endanger his life by collision with an approaching car."

(16) "Contributory negligence, in that defendant says that, with knowledge that said car was approaching the point on said track at which it struck said intestate, and would probably pass said point before said intestate could get entirely across said track, the said intestate voluntarily undertook to cross said track at said point, and was injured and killed by being struck by said car at said point before he had entirely crossed said track; said intestate having attempted to cross said track without having informed said servants or agents of his purpose to do so, and without having been assured by them that it would be safe for him to do so."

(A) "Contributory negligence in this: Said intestate having seen the defendant's car which struck him approaching the point at which he was struck by it at a high rate of speed, and knowing that it was probable that said car would continue to run at said speed while passing over the point at which said intestate was struck, nevertheless negligently ran in front of said car at said point, while the same was approaching said point, at said high rate of speed, and was in dangerous proximity to said point, knowing that it was probable that he would not have time to go across defendant's track at said point before being struck by said car, un-

less the speed thereof was reduced before said car reached said point, and without any assurance that its speed would be reduced before it reached said point."

(B) "Contributory negligence in this: After the said servant of the defendant became aware of said intestate's peril of being run against by said car, said intestate, well knowing that said car was approaching the point at which he was struck by it at a rapid rate of speed, and without any assurance that its speed would be reduced before passing said point, negligently attempted to cross said track on which said car was being run at said point, when said car was in dangerous proximity to said point, and was being run at such high rate of speed, and was killed while making said attempt."

(C) "Contributory negligence in this: After the said agents or servants became aware of said intestate's peril of being run against by said car, the said intestate saw the said car approaching at a high rate of speed the point on track of defendant at which he was struck by it, and in dangerous proximity thereto, and thereafter, knowing that it was probable that it would be impossible for him to cross said track before said car reached said point, unless the speed thereof was reduced, and without any assurance that the speed of said car would be reduced before reaching said point, and fully appreciating his peril, said intestate negligently attempted to cross said track at such point, and was struck by said car while making such attempt."

(D) "Contributory negligence in this: After said agents or servants became aware of said intestate's peril of being run against by said car, the said intestate became aware that said car was approaching at a high rate of speed the point on said track at which he was struck by it, and would probably pass said point

before he could cross said track at said point, he being on said track near one side thereof, and said intestate negligently failed to get off of said track at said side, as he might have done by the exercise of reasonable care and prudence, and thereby avoided being struck by said car, but negligently attempted to cross to the other side of said track, and was struck by said car while making such attempt."

(E) "Contributory negligence in this: After said agents and servants in charge of said car became aware of said intestate's peril of being run against by said car, said intestate went upon and attempted to cross said track on which said car was being run, without stopping and looking for cars which might be approaching the point on said track at which he went upon and attempted to cross the same, as aforesaid."

(G) "Contributory negligence in this: After the said agents and servants of the defendant became aware of said intestate's peril of being run against by said car, said intestate saw said car approaching at a high rate of speed the point on the track of defendant at which he was struck by it, and in dangerous proximity to it, and thereafter, knowing that it was highly probable that it would be impossible for him to cross said track before the said car passed the point at which he was struck by it, and that it was highly probable that the speed of said car could not be sufficiently reduced to prevent its passing said point before he could cross said track at said point, and without any assurance that its speed would be reduced sufficiently to enable him to cross said track at said piont in safety, said intestate negligently attempted to cross said track at said point, appreciating the danger of doing so as fully and well as said servants and agents appreciated the same, and said in-

testate was struck by said car while so attempting to cross said track."

The exceptions to evidence sufficiently appear from the opinion. The following charges were refused to the defendant:

(5) "I charge you that, if the motorman in charge of said car did not have time to reverse the same after becoming aware of the peril of plaintiff's intestate before the car struck such intestate, then said motorman was guilty of no negligence in failing to reverse the car." ·

(6) "If, after considering all the testimony in this case, your minds are left in a state of confusion as to whether or not plaintiff should recover in this case, you cannot find for the plaintiff."

(7) Covered by charge given.

(10) "I charge you, gentlemen of the jury, that, if you believe the evidence in this case, you cannot find that plaintiff's intestate was in a perilous position before some part of his body got on or was near the track on which the car that struck him was being run, and that said car would strike such part of his body in running over the track at the place where said intestate was on the same, or near there, as stated above."

(11) "I charge you that all that the motorman in charge of said car was required to do after becoming aware of the peril to plaintiff's intestate was to use such means as were at hand, in a skillful manner, to stop said car; and, if you are reasonably satisfied from the evidence in this case that he did so, you must find for the defendant under the third count of the complaint, as amended."

(12) "I charge you that, even if you believe from the evidence in this case that the motorman in charge of defendant's car that struck plaintiff's intestate saw said intestate running toward the track on which said car

was being run, he had the right to assume that said intestate would stop and listen for said car before actually going on the said track; and it did not become incumbent upon said motorman to make any effort to stop this car until the circumstances indicated to him that it was probable that said intestate would not stop and look before going upon said track."

(13) "If the jury believe from the evidence that plaintiff's intestate approached the railroad crossing wishing to cross, and that he saw and heard the car approaching, and that he for himself measured the distance and the time that it would take him to cross, and, acting upon his own judgment, undertook to cross in front of said approaching car, then I charge you that he assumed the risk of injury in crossing in front of said car; and his administrator cannot hold defendant responsible in this action, if you believe from the evidence that the deceased was injured in crossing the track in front of said car, unless the intention of plaintiff's intestate was apparent to the motorman operating said car, and, after his perilous intention and conduct became apparent, by the exercise of due care and diligence, the injury could have been avoided."

(14) "If you are reasonably satisfied from the evidence that the motorman saw the deceased at or near the track, but it also became apparent to the motorman that the deceased saw the approaching car, and was in such a position as to have gotten out of the way of danger, the motorman would have the right to presume that the deceased would get out of the way of danger, until by his conduct he showed that it was not his purpose so to do; and it would be the duty of the motorman to begin to stop the car only from the moment that the deceased's conduct made it reasonably manifest that he did not intend to get out of the way, or when, from

deceased's position, it became reasonably manifest that he could not reasonably extricate himself from his peril; but the motorman, acting with reasonable prudence and in good faith, might delay using such preventive efforts until too late to avoid the collision. In which event the defendant would not be liable."

Count 2 is as follows: "Plaintiff sues as administrator of the estate of H. F. Saxon, and claims of the defendant, a body corporate, owning and operating an electric street railway in the county of Jefferson, state of Alabama, $100,000, for that, to wit, February 22d, plaintiff's intestate, while in the act of crossing the street railway aforesaid at a public crossing, was run against and killed by a car on the track of the railway aforesaid, in the county and state aforesaid. Plaintiff avers that the death of his intestate was proximately caused by the wanton, willful, or intentional conduct of the servants or agents of the defendant while acting within the line and scope of their employment, which wanton, willful, or intentional conduct consisted in this: The servants or agents aforesaid wantonly, willfully, or intentionally ran a car against plaintiff's intestate, with knowledge that plaintiff's intestate would probably be injured thereby, and with reckless disregard of the consequence."

(3) Same as 2 down to and including the words "the county and state aforesaid," where they last occur therein, and adds: "plaintiff avers that the death of his intestate was proximately caused by the negligence of the defendant's servants or agents while acting within the line and scope of their employment, which negligence consisted in this: Said servants or agents negligently failed to use all the means at their command to prevent said car from running against plaintiff's intestate after becoming aware of said intestate's peril of

being run against by said car, when, by the use of said means, said car would have been prevented from running against said intestate, and his death would have been avoided."

TILLMAN, BRADLEY & MORROW, and JOHN S. STONE, for appellant. The court erred in sustaining demurrer to plea 5 as an answer to count 3 of the complaint as amended.—*Frazer v. S. & N.*, 81 Ala. 199; *H. A. & B. v. Sampson*, 91 Ala. 564; *M. & C. v. Martin*, 117 Ala. 367. On these same authorities the court erred in sustaining demurrers to plea 6 as an answer to count 3. There was error in sustaining demurrers to plea 10 as an answer to count 3.—*B. R. L. & P. Co. v. Oldham*, 141 Ala. 195; *Butler v. R. T. & C.*, 58 Atl. 775. On these same authorities, the court erred in sustaining demurrers to pleas 11, 12, 13 and 14, as an answer to count 3 of the complaint. Plea 15 was a good answer to said count.— *Pace v. L. & N.*, 166 Ala. 519. This was true of plea 16 as well.—*L. & N. v. Brown*, 121 Ala. 221. The court should have overruled demurrer to plea A.—*L. & N. v. Brown, supra; A. G. S. v. McWhorter*, 156 Ala. 269; *Johnson v. B. R. L. & P. Co.*, 149 Ala. 529; *C. of G. v. Blackman*, 169 Ala. 304; Beech on Contributory Neg. sec. 56; 3 Ell. on R. R. 379; 43 S. W. 573. On these same authorities demurrers to pleas B, C, and D, should have been overruled, as well as pleas E and G. The court erred in requiring appellant to strike the jury from the twenty-four jurors named in the list furnished the parties. The appellant demanded a struck jury in accordance with sec. 4635, and was entitled to have a list of twenty-four compentent jurors.—*K. C. M. & B. v. Ferguson*, 143 Ala. 512; *Davis v. Hunter*, 7 Ala. 135. Culver's name appears on the list as being an employee of defendant and was not a competent juror.—*L. & N. v.*

*Cooke,* 168 ·Ala. 592; *B. R. L. & P. v. King,* 42 South 612; *Thomas v. State,* 133 Ala. 139; *Birdsong v. State,* 47 Ala. 68. The court erred in permitting it to be shown whether or not the accident happened in a thickly populated neighborhood with a number of people on both sides of the track.—*Brewer v. Watson,* 65 Ala. 88; *Steen v. Swadley,* 126 Ala. 622; *B. R. & E. v. Clay,* 108 Ala. 234; *Scales v. Cent. I. Co.,* 55 South. 823. .To run by a regular stopping place is not an element of wantonness. —*T. C. & I. v. Hansford,* 125 iAla. 365. It was incompetent to show that at the time of day the accident happened, that particular crossing is most frequently used. —*Patterson v. State,* 156 Ala. 62; *Crawford v. State,* 112 Ala. 7. It is error to permit it to be shown that one on an approaching car could be seen coming out of the store towards the crossing.—*C. of Ga. v. Vaughan,* 93 Ala. 211. The court was in error in permitting the motorman to answer as to the quickest way to lessen the speed of a car in an emergency.—*A. G. S. v. McWhorter, supra.* The court was in error in excluding the testimony of the motorman that that was all I could do, the motorman having stated that he cut off the current and applied the emergency brake.—*C. of Ga. v. Chicago V. Co.,* 169 Ala. 287; *M. J. & K. C. v. Hawkins,* 163 Ala. 588; *B. R. L. & P. Co. v. Randall,* 149 Ala. 545; *Choat v. So. Ry.,* 119 Ala. 611; *A. G. S. v. Lynn,* 103 Ala. 134. The court was in error in permitting the motorman to demonstrate with his hands the actions required to stop the car.—*Clay's Case,* 108 Ala. 234; *Decatur C. W. & M. Co. v. Mehaffey,* 128 Ala. 255; *Tesney v. State,* 77 Ala. 33; *A. G. S. v. Collier,* 112 Ala. 682; *A. G. S. v. Burgess,* 114 Ala. 596. Walker had testified for defendant and was not asked by either party as to what he had told Ensey as to the quickest way of stopping a car, and the court having permitted

[Birmingham R. L. & P. Co. v. Saxon.]

Ensey to state what Walker said to him should have permitted the reintroduction of Walker to deny, qualify or explain his statement. The court erred in its oral charge to the jury.—*L. & N. v. Webb*, 97 Ala. 310; *I. C. R. R. Co. v. Nelson*, 173 Fed. 915; 65 Fed. 386; 52 N. E. 1020. The court should have given the affirmative charge as to the second count as amended.—*M. & C. v. Martin*, 177 Ala. 367; *Lands v. L. & N.*, 156 Ala. 328. Defendant was entitled to the affirmative charge as to the 3rd count.—*Boyd v. W. W. Ry Co.*, 16 S. W. 909. The failure of the motorman to keep a lookout ahead does not constitute wantonness.—*Duncan v. S. L. & S. F.*, 152 Ala. 118; *N. C. & St. L. v. Harris*, 142 Ala. 249; *H. A. & B. v. Maddox*, 100 Ala. 618; *A. G. S. v. Guest*, 144 Ala. 380; *Ga. Pac. v. Lee*, 92 Ala. 262. It is the legal duty of one approaching the track to stop and look for cars.—*L. & N. v. Williams*, 55 South. 218; *B. R. L. & P. v. Odom*, 141 Ala. 195. Counsel discuss other charges refused, but without further citation of authority.

DENSON & DENSON, for appellee. The court properly sustained demurrer to plea 5.—*B. R. L. & P. Co. v. Yates*, 169 Ala. 387. In any event, no injury resulted to defendant.—*S. S. & S. Ry. v. Campbell*, 158 Ala. 445; *L. & N. v. Orr*, 121 Ala. 501. The essential allegations of a plea of contributory negligence addressed to a count charging negligence after discovery of peril will be found fully stated in the following cases.—*So. Ry. v. Stewart*, 153 Ala. 137; *A. G. S. v. McWhorter*, 156 Ala. 277; *A. G. S. v. Burgess*, 116 Ala. 515; *N. C. & St. L. v. Wallace*, 164 Ala. 214; *Johnson v. B. R. L. & P. Co.*, 149 Ala. 534; *Bryant v. A. G. S.*, 155 Ala. 375; *C. of Ga. v. Blackman*, 169 Ala. 310; *Anniston E. & G. Co. v. Rosen*, 159 Ala. 211; *L. & N. v. Calvert*, 170 Ala.

572.  Under these authorities, the court properly sustained demurrers to the various numbered pleas as an answer to count 2 of the complaint, it being based on negligence after discovery of peril.  The court properly sustained demurrers to pleas A and B.—*Johnson v. B. R. L. & P. Co., supra; M. & C. R. R. Co. v. Martin,* 131 Ala. 278; *C. of Ga. v. Foshee,* 125 Ala. 218; *West Pratt C. Co. v. Andrews,* 150 Ala. 374.  This is also true of pleas C. and D.—*So. Ry. v. Stewart, supra; N. C. & St. L. v. Wallace, supra; Osborn v. Ala. S. & W. Co.,* 135 Ala. 575; *Daniels v. Carney,* 148 Ala. 84.  There was nothing in any of the evidence to authorize the defense of subsequent contributory negligence.—*Freeman v. C. of Ga.,* 154 Ala. 622; *Tannehill v. B. R. L. & P. Co.,* in MSS; *L. & N. v. Brown, supra.*  There is no error in requiring defendant to proceed with the struck jury.—*Davis v. Hunter,* 7 Ala. 135; *Smith v. Kaufman,* 100 Ala. 408.  The facts sought were collective facts and should have been stated as such by the witnesses. —*Weatherly v. N. C. & St. L.,* 166 Ala. 587; *H. A. & B. v. Sampson,* 112 Ala. 434; 164 Ind. 154.  It is also competent for it to be stated that the station was a regular stopping place.—*Redus v. Milner Co.,* 41 South. 634; *Tucker v. A. B. & A.,* 166 Ala. 569; *B. R. L. & P. v. Hayes,* 153 Ala. 192.  On these authorities it is also competent to show that this particular crossing was used more frequently at the time of the accident than at other times of the day.—*A. G. S. v. Guest,* 144 Ala. 383; *So. Ry. v. Shipp,* 169 Ala. 334.  It is competent to show that those on the car could see a person approaching the crossing from the store.—*Bir. Southern v. Fox,* 167 Ala. 284; 8 Enc. of Evid. 912; *K. C. M. & B. v. Weeks,* 135 Ala. 619.  The witnesses were shown to be expert motormen, and could properly state as to the quickest way of stopping a car.—*Reiter-C. Mfg. Co. v.*

*Hanlon,* 144 Ala. 215; *Dilburn v. L. & N.,* 156 Ala. 240; *A. G. S. v. McWhorter, supra.* The illustrative testimony permitted was not error.—*Ala. Min. v. Jones,* 114 Ala. 532; *M. J. & K. C. v. Bromberg,* 141 Ala. 281. At any rate it was favorable to defendant.—*B. R. L. & P. Co. v. Mason,* 144 Ala. 390. It was within the discretion of the trial court to permit a witness to be reexamined after he had been previously examined.—*So. Indus. Inst. v. Hellier,* 142 Ala. 688; *Morrisette v. Wood,* 123 Ala. 391. There was no error in the court's oral charge.—*C. of Ga. v. Partridge,* 136 Ala. 596; *So. Ry. v. Stewart,* 164 Ala. 174; *L. & N. v. Holland,* 55 South. 109. Defendant was not entitled to the affirmative charge as to the 2nd count.—*L. & N. v. Orr, supra; A. G. S. v. Guest, supra; s. c.* 136 Ala. 352; *Bir. So. v. Fox, supra; So. Ry. v. Smith,* 163 Ala. 181; *H. A. & B. v. Robins,* 124 Ala. 116; *B. R. L. & P. Co. v. Hayes, supra; L. & N. v. York,* 128 Ala. 312. It thus appears that there was sufficient evidence to sustain the wanton count. Defendant was certainly not entitled to the affirmative charge as to the 3rd count.—*L. & N. v. Young, supra; s. c.* 168 Ala. 564; *B. R. L. & P. Co. v. Morris,* 168 Ala. 564; *Brown v. S. L. & S. F., supra.* Counsel discuss other assignments of error, but without further citation of authority.

SIMPSON, J.—This action is by the appellee against the appellant for damages on account of the death of the plaintiff's intestate from being struck by a car of defendant's.

The first assignment of error insisted on is that the court erred in sustaining the demurrer to plea 5 as an answer to count 3 of the complaint. The court erred in sustaining the demurrer to said plea. The plea showed a knowledge of the danger by alleging that the

intestate, *"well knowing that defendant's car was rapidly approaching,"* "measured the distance and took the chances of crossing the track before the car reached him, and attempting to cross said track *immediately in front of* said moving car;" and it shows that such negligence was subsequent to the negligence of the defendant (if there was such) in failing to use preventive efforts, after discovery of the peril of the intestate, by alleging that said intestate left a place of safety, and thus stepped immediately in front of said rapidly approaching car *"in such close proximity thereto* that no preventive efforts on the part of the employees of defendant in charge of said car could have prevented injury to him." If it was in such close proximity that no preventive efforts could have prevented the injury, it necessarily follows that, if there was any subsequent negligence on the part of the defendant, it must have been before said act of contributory negligence by the intestate.

In the case of *Johnson v. Birmingham Railway, Light & Power Co.,* 149 Ala. 529, 531, 534, 43 South. 33, the plea, in addition to being alleged in the alternative, does not show as definitely as does the one in this case, the knowledge of the peril and the time when the negligence occurred; and the court held that it simply set up a condition.

In the case of *Anniston Electric & Gas Co. v. Rosen,* 159 Ala. 195, 200, 48 South. 798, 133 Am. St. Rep. 32, the only contributory negligence alleged was initial, and not subsequent.

In the case of *Louisville & Nashville Railroad Co. v. Calvert,* 170 Ala. 565, 572, 54 South. 184, the plea does not allege any facts showing the distance at which the cars were when plaintiff attempted to cross, whether the danger was obvious to plaintiff, or whether it was be-

fore or after the initial negligence of defendant. In fact, as said by the court, it alleged the negligence itself only as a conclusion.

What has been said as to plea 5 applies, also, to the demurrers to plea 6.

There was no error in sustaining the demurrer to plea 10 as an answer to count 3 of the complaint. No facts are alleged, showing that the negligence of the intestate was subsequent to that of the defendant, if there was such. For the same reason, there was no error in sustaining the demurrer to plea 11.

There was no error in sustaining the demurrer to plea 12. It does not show that the intestate was aware of the peril. For the reasons above assigned, there was no error in sustaining the demurrers to pleas 13 and 14.

For reasons already stated, and because plea 15 states simply conclusions, and not facts, there was no error in sustaining the demurrer to said plea.

There was no error in sustaining the demurrer to plea 16. Besides being otherwise defective, said plea does not state that the negligence complained of was the proximate cause of the injury.

There was no error in sustaining the demurrer to plea A. It does not show that the negligence complained of as contributory was subsequent to the alleged negligence of the defendant after the discovery of intestate's peril.

There was no error in sustaining the demurrer to plea B. While said plea does allege that intestate knew that the car was approaching, and in a subsequent part alleges that he attempted to cross when the car was in dangerous proximity, yet it does not allege that intestate knew it was in dangerous proximity.

There was error in sustaining the demurrer to plea C. Said plea sets up all the elements of contributory negligence subsequent to the negligence of defendant. It is hypercritical to say that it does not appear where the intestate was when an appreciation of his peril dawned on him. It states distinctly that, "fully appreciating his said peril," he attempted to cross. In other words, at the time he attempted to cross, he fully appreciated the peril. As to this point, MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur, and DOWDELL, C. J., and ANDERSON and MCCLELLAN, JJ., dissent. For the same reasons, the court erred in sustaining the demurrer to plea D.

The demurrer to plea E. was properly sustained, as it did not allege that the intestate was aware of the danger of crossing the track.

The court erred in sustaining the demurrer to plea G, as it correctly states the law.

There was no error in permitting the evidence as to whether the locus in quo was "a thickly populated neighborhood," where there were "numbers of people on both sides of the track," etc. Such evidence is permissible, in connection with other evidence, in order to determine whether the conditions at such place were such as to impute simple negligence or willful or wanton wrong to the engineer in running at a high rate of speed at the locality.—*Highland Ave. & Belt R. R. v. Sampson,* 112 Ala. 425, 434, 20 South. 566; *L. & N. R. R. Co. v. Orr,* 121 Ala. 489, 502, 26 South. 35; *Weatherly v. N. C. & St. L. Ry.,* 166 Ala. 587-590, 51 South. 959.

There was no error in overruling the objections to the questions as to whether Wilks Station was a regular station or stopping place, etc. Evidence as to the locality where the injury was received, its condition

and surroundings, cannot work any injury to either party. This was a collective fact to which any witness might testify.

For the same reason, there was no error in permitting the evidence as to at what hour of the day the crossing was most used. At any rate, the answers were favorable to the defendant, and it was not injured thereby.—*Redus v. Milner, etc., R. Co.*, 41 South. 634; *A. G. S. R. R. Co. v. Guest*, 144 Ala. 383, 39 South. 654; *A. G. S. R. R. Co. v. Guest*, 136 Ala. 354, 34 South. 968; *B. R., L. & P. Co. v. Ryan*, 148 Ala. 76-7, 41 South. 616; *Southern Railway Co. v. Forrister*, 158 Ala. 483, 48 South. 69; *Birmingham Southern Railway v. Fox*, 167 Ala. 284, 285, 52 South. 889.

There was no reversible error in permitting questions and answers as to whether there was anything to prevent the motorman from seeing one coming out of the store, and crossing.

There was no error in permitting the witness, John Young, to testify as to the best and quickest way to stop a car—to lessen its speed, etc. He testified that he had been a motorman for between seven and eight years, had had experience in stopping cars, etc.; and the court, in the proper exercise of its discretion, allowed the testimony. If there was any difference between the cars that the witness had managed and the one in question, that could have been brought out in cross-examination.

There was no reversible error in excluding the expression by the witness Colbie, after he had stated what he did to stop the car, "That is all I could do." In the first place, the admission of expert testimony is largely within the discretion of the trial court.—*Ala. Consol. C. & I. Co. v. Heald*, 168 Ala. 627, 53 South. 162; *Stewart v. Sloss-Sheffield Steel & I. Co.*, 170 Ala. 550,

54 South. 48: The witness had merely testified that he had been running a car for about two months, and there was no evidence as to his expertness. In addition, the material question was not, what the particular motorman could do, but what a skillful one, similarly situated, could have done.—*Brown v. St. Louis & San Francisco R. R. Co.,* 171 Ala. 310, 55 South. 109; *L. & N. R. R. Co. v. Young,* 168 Ala. 564, 53 South. 213; *B. R., L. & P. Co. v. Morris,* 163 Ala. 308, 209, 50 South. 198.

There was no error in permitting the motorman to illustrate, with his hands, the time it would take him to go through the various motions necessary to reverse the lever, etc., in order to stop or check up the car. Being an expert, and familiar with the amount of resistance usually met with in performing these services, it seems that he would automatically make the motions in about the time usually employed. But, however that may apply, the illustration would present to the jury a better idea of what was to be done than could be explained by mere words; and if counsel was of opinion that it would take more time, by reason of the resistance of the levers, that could be brought out on cross-examination, and the jury could judge of it and give such weight to the illustration as they thought proper, This bears no analogy to the case of *Birmingham Railway, Light & Power Co. v. Hayes,* 153 Ala. 186, 44 South. 1032, in which the answer was the mere solving of a mathematical proposition, which the court said the jury could work out as well as the witness; nor to the case of *Tesney v. State,* 77 Ala. 38, in which "a separate and distinct experiment" was made by firing at a coat; nor to the *Burgess Case,* 114 Ala. 596, 22 South. 169, where, also, a separate and distinct experiment was made by placing children in the supposed position

of the injured, in order to determine whether they could be seen at a certain distance; nor to the *Collier Case,* 112 Ala. 682, 14 South. 327, where an experiment was also sought to be made by *pouring* a liquid fire extinguisher on cloth, so as to determine what injury could be done to clothing by the *explosion* of a bottle containing the extinguisher.

To the question to the motorman, on cross-examination, "You wanted to make town as soon as you could?" the defendant objected, but stated no ground of objection. The court was not bound to cast about for grounds to sustain the objection, and consequently cannot be placed in error for overruling the same.—*Dryer v. Lewis,* 57 Ala. 554, 555; *B. R., L. & P. Co. v. Landrum,* 153 Ala. 200, 45 South. 198, 127 Am. St. Rep. 25; *L. & N. R. R. Co. v. Seale,* 172 Ala. 480, 55 South 238.

The witness Ensey, having testified that he was instructed in the duties of motorman by Mr. Walker, who had previously testified to the same fact, was asked: "What did Mr. Walker tell you was the most effective way to stop a car in emergency?" "The defendant objected to said question, on the ground that it called for illegal, irrelevant, and immaterial testimony." The objection was overruled, and the witness answered: "Well, reversing was the quickest way." No motion was made to exclude the answer. It is now insisted that the ruling was erroneous, because the question "does not hypothesize facts in issue, does not limit the car referred to to the character of car alleged to have struck plaintiff's intestate," and because Walker had not been questioned about the matter.

The broad grounds of illegality and immateriality do not cover the objections insisted on; and, where a party states particular grounds of objection, he waives all

others.—*Southern Railway Co. v. Gullatt,* 158 Ala. 507, 48 South. 472; *Garrett v. Trabue, Davis & Co.,* 82 Ala. 232, 3 South. 149; *St. L. & S. F. R. R. Co. v. Savage,* 163 Ala. 58, 50 South. 113; *Broyles v. Central of Georgia Ry. Co.,* 166 Ala. 627, 52 South. 81 139 Am. St. Rep. 50.

The answer not being responsive to the question, and there being no motion to exclude the answer, the court could not be put in error for its ruling.—*Sloss-Sheffield Steel & I. Co. v. Sharp,* 156 ¦Ala. 284, 289, 47 South. 279; *Broyles v. Central, etc., Co., supra.* For these reasons, there was no error in overruling said objection.

The so-called question: "Suppose, Mr. Ensey, there was a man on the track, and you wanted to stop the car or slacken its speed as quick as possible, in order to save his life?"—does not really contain any question at all. Whether the question was interrupted before it was finished, or what question was intended to be asked, we cannot tell. However, no motion was made to exclude the answer, and the court cannot be put in error.—Authorities, supra.

The witnesses for plaintiff, in rebuttal, had stated what Walker's instructions were to them, and particularly that said Walker had instructed them that reversing the lever was the best and quickest way to stop or check a car. After the plaintiff had closed his testimony in rebuttal, the defendant proposed to examine said Walker as to what instructions he had given witnesses on this subject, and the court refused to admit the testimony.

It is true that after the testimony has been closed it is a matter within the sound discretion of the trial judge whether or not to reopen the testimony (*Chandler Bros. v. Higgins,* 156 Ala. 516, 47 South. 284); and it is also true that after the plaintiff has closed

his testimony in rebuttal it is within the discretion of the court whether or not to allow surrebuttal testimony as to matters which might have been inquired into before (*So. Industrial Institute v. Hellier,* 142 Ala. 688, 39 South. 163) ; but where, as in this case, testimony is brought out on rebuttal, as to facts which could not have been testified to before, by defendant's witness, we think justice requires that the defendant should be allowed, in surrebuttal, to contradict the same.

Walker could not legally have testified before as to what instructions he had given the witnesses; but he having testified as to the best and quickest way to stop or check a car or cars, conditioned as these were, and the evidence in rebuttal having a tendency to impeach his testimony by showing that his instructions were contrary to his testimony, he should have been allowed to either contradict or explain said statements. This was not, as counsel for appellee thinks, seeking merely "a contradiction of Ensey's contradiction of Walker's previous testimony," because Walker had not testified on that subject; but it was the introduction of new matter, tending to throw a cloud over Walker's testimony. The court erred in not admitting said testimony.

There was no error in that part of the court's oral charge excepted to.—*L. & N. R. R. Co. v. Holland,* 173 Ala. 675, 55 South. 1001; *Brown v. St. L. & S. F. R. R. Co.,* 171 Ala. 310, 55 South. 108; *L. & N. R. R. Co. v. Young,* 168 Ala. 564, 53 South. 213.

The court erred in refusing to give the general charge in regard to the second count of the complaint, as there was no evidence to justify a finding that the injury was caused by the willful, wanton, or intentional act of the servants of the defendant. As to this point, all of the justices concur, except DOWDELL, C. J., and SAYRE, J., who think it was a matter for the jury to consider.

There was no error in refusing to give the general charge as to the third count of the complaint, as it was a question for the jury whether or not there was simple subsequent negligence.—*N., C. & St. L. Ry. v. Harris,* 142 Ala. 252, 243, 37 South. 794, 110 Am. St. Rep. 29. As to this point, DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur; but MCCLELLAN, MAYFIELD, and SOMERVILLE, JJ., dissent, holding that the general charge should be given as to said third count.

Charge 5, requested by the defendant, was properly refused, as it assumes that reversing was the best way to stop the car quickly, on which point the evidence is in conflict.

Charge 6 expresses the law, and the court erred in refusing to give it. If the jury must be reasonably satisfied, it necessarily follows that, if their "minds are left in a state of confusion as to whether or not plaintiff should recover," they cannot find for the plaintiff. —*L. & N. R. R. Co. v. Sullivan Timber Co.,* 126 Ala. 95, 99, 103, 104, 27 South, 760; *Calhoun v. Hannan & Michael,* 87 Ala. 277, 285, 6 South. 291.

In the *Calhoun Case,* 87 Ala. 285, 6 South. 292, supra, a charge that, "if the evidence leaves them confused or uncertain as to the truth or falsity of such charge, they must find for the defendant," was sustained; the court saying: "Manifestly, if their minds are left in a state of confusion and uncertainty on this point, the plaintiff has failed to make out this very essential part of his case, and cannot recover."

In the *Sullivan Timber Co. Case, supra,* the trouble with the charge was that it exacted too high a degree of proof in requiring the jury to be "satisfied," in place of "reasonably satisfied," and the question was whether the addition of the words "uncertainty, confusion, and doubt" cured that infirmity; and it was held that they

did not, evidently because no words could extract the
defect in the previous part of the charge; and the court
states, referring to the *Hill Case* and the *Brown-Master Case*, that, if the words "confused or uncertain" had
been connected by an "and," "they would not have vitiated the charge."

In the case of *Alabama Great Southern Railroad Co.
v. Hill*, 93 Ala. 514, 526, 527, 9 South. 722, 30 Am. St.
Rep. 65, the trouble was that the charge required the
jury's minds to be absolutely "certain" and free from all
"doubt," whether reasonable or otherwise; and the statement quoted from the *Calhoun Case* is approved.

In the case of *Brown v. Master*, 104 Ala. 464, 16
South. 443, there was the same vice, to wit, the requiring of absolute certainty.

Charge 7, requested by the defendant, was covered
by charge 19, given on request of defendant, and no
error can be predicated on its refusal.

There was no error in refusing to give charge 10, requested by the defendant. The intestate's actions and
appearance may have been such as to manifest his intention of crossing the track, before he came in actual
range of the car.—*B. R., L. & P. Co. v. Hayes*, 153 Ala.
178, 181, 183, 44 South. 1032; *Burson v. L. & N. R. R.
Co.*, 116 Ala. 198, 22 South. 457.

Charge 11, requested by the defendant, was substantially covered by charge 6, given at the request of the
defendant, and, in addition, it fails to hypothesize the
use of the means "promptly." There was no error in
its refusal.

There was no error in the refusing to give charge 12.
The word "even" carries an intimation against the supposition.—*Manistee Mill Co. v. Hobdy*, 165 Ala. 411-
418, 51 South. 871, 138 Am. St. Rep. 73. Besides, it

is not stated at what distance the intestate was, when seen running.

The court erred in refusing to give charge 13, at the request of defendant. The same is true as to refusing the fourteenth charge.

The court committed no error in overruling the demurrers to counts 2 and 3 of the complaint as amended.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded. All the Justices concur in the opinion, except as to the points noted in the opinion, in which dissent is expressed.

### ON REHEARING.

PER CURIAM.—Owing to the improper and disrespectful nature of the brief filed on application for rehearing, said brief is stricken from the files, and the application for rehearing dismissed.